U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 2 0 2007

ROBERT H. SHEMWELL, CLERK
BY _____
            DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ALEXANDER WHITE NDAULA,           CIVIL ACTION
          Plaintiff              NO. CV04-0722-A

VERSUS

LEROY Holliday, et al.,          JUDGE DEE D. DRELL
          Defendants            MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to
42 U.S.C. § 1983, in forma pauperis, on March 24, 2004, by pro se
plaintiff Alexander White Ndaula ("Ndaula"), and amended on April
9, 2004 (Doc. Item 4) and July 27, 2004 (Doc. Item 13). At the
time he filed his complaints, Ndaula was an Immigration and Customs
Enforcement detainee incarcerated in the River Correctional Center
("RCC") (formerly the Concordia Correctional Center) in Ferriday,
Louisiana (Doc. Item 13). The named defendants, who are sued in
both their individual and official capacities, are Warden Leroy
Holliday ("Holliday") (regional warden of the CCC), Warden Gary
Allen and Warden Johnson (assistant regional wardens of the CCC),
Warden Pat Smith (assistant warden of the CCC), and Lieutenant
Michael Loyd,[1] Lieutenant Zane Emfinger and Major Ramsey

---

[1] Loyd was never served. Although Ndaula completed a
summons for Loyd, he was no longer employed at CCC on April 20,
2005, when service was attempted; the U.S. Marshal who attempted

(corrections officers employed at CCC), and Cassandra Patt, employed in the CCC medical department.

Ndaula contends that, in March 2004, Wardens Allen and Johnson, and a "gang" of correctional officers, conducted a shake down of the "D" dorm in the CCC, where Ndaula was housed, and used excessive force against him and the other inmates (Doc. Item 1). Ndaula alleges he was approached by a correctional officer who told Ndaula to stop drinking coffee and undo his "head rag;" at the same time, the officer punched Ndaula in the face and yanked him off his bunk bed (Doc. Item 13). Ndaula claims he was stomped on and beaten, his left thumb was twisted when he put out his hands for cuffing, his face was slammed into the bars, and he was shocked with a taser (Doc. Item 1). After the assault, Ndaula alleges he was denied medical care to examine and treat his injuries (Doc. Item 1). Ndaula, an ICE detainee, further contends he was improperly housed with convicted inmates at CCC (Doc. Item 1). Ndaula contends he was deprived of bedding for his mattress and that his personal radio cassette player was taken and never returned (Doc. Item 1).

---

service was informed that Loyd was working overseas (Doc. Item 16). Accordingly, I will recommend that the complaint against Loyd be dismissed without prejudice under Fed.R.Civ.P. 4(m). See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

Specifically, Ndaula contends Holliday instituted an unconstitutional policy of assaults against inmates, Johnson, Lloyd, Ramsey and Boke assaulted him, Allen stood by while Ndaula was assaulted and failed to protect Ndaula, Smith filed a false incident report to cover up the incident of March 10, 2004, Emfinger subjected Ndaula to unconstitutional conditions of confinement, and Patt denied Ndaula medical care for the injuries he sustained in the incident.

Ndaula contends that, as a result of the assault, he suffered a severe back injury, a knee injury, headaches, and loss of sleep. For relief, Ndaula asks for a jury trial and monetary damages. Ndaula is presently residing in Boston, Massachusetts, awaiting deportation.

The defendants answered the complaint (Doc. Item 28). Patt, Allen, Smith and Emfinger filed a partial motion for summary judgment (Doc. Item 36), with a statement of material facts and affidavits. Holliday, Johnson, Ramsey and Boke filed a statement of issues for trial (Doc. Item 38). The partial motion for summary judgment is now before the court for disposition.

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show

3

> that there is no genuine issue as to any material fact
> and that the moving party is entitled to judgment as a
> matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest
> upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must
> set forth specific facts showing that there is a genuine
> issue for trial.   If the adverse party does not so
> respond, summary judgment, if appropriate, shall be
> entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material".  A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

4

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.    In  this  analysis,  we  review  the  facts  and  draw  all inferences most favorable to the nonmovant.   <u>Herrera v. Millsap</u>, 862 F.2d 1157, 1159 (5th Cir. 1959).    However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.   <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

<u>Law and Analysis</u>

<u>Fourteenth Amendment</u>

Ndaula  was  an  Immigration  and  Customs  Enforcement  detainee when  he  was  in  the  River  A person  detained  for  deportation  is considered to be the equivalent of a pretrial detainee; a pretrial detainee's  constitutional  claims  are  considered  under  the  due process  clause  instead  of  the  Eighth  Amendment.    <u>Edwards  v. Johnson</u>, 209 F.3d 772, 778 (5th Cir. 2000), citing <u>Ortega v. Rowe</u>, 796 F.2d 765, 767 (5th Cir.1986), cert. denied, 481 U.S. 1013, 107 S.Ct. 1887 (1987).

To determine the appropriate standard to apply in analyzing constitutional  challenges  by  detainees,  the  court  must  first

5

classify the challenge as an attack on a conditions of confinement or as an episodic act or omission.  A condition of confinement case is a constitutional attack on general conditions, practices, rules or restrictions of pretrial confinement.  In such cases we may assume, by the municipality's promulgation and maintenance of the complained of condition, that it intended to cause the alleged constitutional deprivation.  However, if the complained-of harm is a particular act or omission of one or more officials, the action is characterized as an episodic act or omission of one or more officials, the action is characterized as an episodic act or omission case.  <u>Flores v. Cty. of Hardeman</u>, 124 F.3d 736, 738 (5th Cir. 1997), quoting <u>Hare v. City of Corinth</u>, 74 F.3d 633, 644-45 (5th Cir. 1996).  Also, <u>Edwards</u>, 209 F.3d at 778.

In an episodic act or omission case, an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission.  The detainee in such a case must establish that the official(s) acted with subjective deliberate indifference to prove a violation of his constitutional rights.  To succeed in holding a municipality accountable for such a violation, the detainee must show that the municipal employee (1) violated his clearly   established   constitutional   rights   with   subjective

6

deliberate indifference and (2) the violation resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference. Flores, 124 F.3d at 738, quoting Scott v. Moore, 114 F.3d 51, 54 (5th Cir. 1997), and Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

In many jail condition cases, the conditions themselves constitute the harm. This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions. Scott, 114 F.3d at 53. Hence, where a detainee complains of the number of bunks in a cell or his television or mail privileges, the wrong of which the detainee complains is a general condition of confinement. In such cases, the reasonable relationship test of Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979), is apposite, and it may be assumed, by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation. Under Bell, a constitutional violation exists only if the court finds that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective. Scott, 114 F.3d at 53.

Excessive Force - Allen

Ndaula contends correctional officers used excessive force against him on March 10, 2004, resulting in a severe back injury, a knee injury, headaches, and loss of sleep. Ndaula contends Allen

7

stood by and failed to stop the assault and protect Ndaula.

To state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable. Ikerd, 101 F.3d 430, 433-34 (5th Cir. 1996). In gauging the objective reasonableness of the force used by a law enforcement officer, the court must balance the amount of force used against the need for that force. Ikerd, 101 F.3d at 433-34. The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed. Ikerd, 101 F.3d at 434. Also, a plaintiff asserting an excessive force claim is required to show he suffered at least some form of injury. The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed. Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001); Williams v. Bramer, 180 F.3d 699, 703-704 (5th Cir.), clarified on rehearing, 186 F.3d 633 (5th Cir. 1999).

A prison guard has a duty to intervene and attempt to end an assault on an inmate. Buckner v. Hollins, 983 F.2d 119, 122 (8th Cir. 1993). Also, Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995), citing Smith v. Dooley, 591 F.Supp. 1157, 1169 (W.D.La. 1984), aff'd, 778 F.2d 788 (5th Cir. 1985). The requisite mental state in situations where prison officials do not respond with the

8

physical use of force is that of deliberate indifference.  MacKay
v. Farnsworth, 48 F.3d 491 (10th Cir. 1995).

A prison official acts with deliberate indifference to an
inmate's safety when the official is present at the time of an
assault and fails to intervene or otherwise act to end the assault.
However, a correctional officer's failure to intervene in an inmate
fight does not constitute a constitutional violation if there is
evidence justifying the correctional officer's failure to
intervene, such as when intervention would threaten the health and
safety of all concerned (i.e. the guard is alone and unarmed or
another guard has been taken hostage).  Williams v. Mueller, 13
F.3d 1214, 1215-16 (8th Cir. 1994), and cases cited therein.

An officer may be liable under Section 1983, under a theory of
bystander liability, if he (1) knows that a fellow officer is
violating an individual's constitutional rights, (2) has a
reasonable opportunity to prevent harm, and (3) chooses not to act.
Randall v. Prince George's Cty., Md., 302 F.3d 188, 204 (4th Cir.
2002).  The rationale underlying the bystander liability theory is
that a bystanding officer, by choosing not to intervene,
functionally participates in the unconstitutional act of his fellow
officer.  Randall, 302 F.3d at 204 n. 24.

Ndaula states in an affidavit (Doc. Item 4) that, on March 8,
2004, new management took charge of the Concordia Parish
Correctional Facility, which was renamed the River Correctional

Center.  Ndaula also states in his affidavit that, on March 10, 2004, a team of guards from other institutions (which he believes were the LaSalle Correctional Center and/or the Catahoula Correctional Center), including Assistant Warden Gary Allen and Warden Johnson of the LaSalle Correctional Center, entered the Delta Dorm (also known as the "D" Dorm) and yelled for all inmates to get on their bunks.  Ndaula states in his affidavit that he was already on his bunk and an unknown guard pulled his head up by his "do-rag" and jerked him off his bunk and onto the floor, where four officers kick and punched him, handcuffed him, and assaulted and slammed him around (Doc. Item 4).  Ndaula states that, when he asked to see the warden and asked why he was being assaulted, Warden Johnson presented himself and said "'cause we can, that's why" (Doc. Item 4).  Ndaula states in his affidavit that the attack by the guards then intensified, with the guards hitting him with flashlights and keys, slamming him into the bars, injuring his left knee, and stunning him with an elective voltage gun, then refusing to take him to a medical doctor for a complete evaluation of his injuries (Doc. Item 4).  Ndaula states in his affidavit that, instead of the bruises gradually resolving, the pain in his back and left knee worsened (Doc. Item 4).

Ndaula also submitted an affidavit from Demario Rontez Richmond, who states that, on March 10, 2004, he saw bruises on Ndaula's face and cuts on his wrist cause by handcuffs (Doc. 4).

Richmond also states in his affidavit that Ndaula also complained of swelling in his neck and lower back pain from the stun gun, for which he states that Ndaula was denied medical care (Doc. Item 4). Richmond also states in his affidavit that he was in lockdown and saw that Ndaula was denied bedding for his mattress and his dinner meal by Emfinger (Doc. Item 4). Richmond states he saw Ndaula "brutalized" by guards and saw several other inmates beaten, spayed with mace, and sunned withe a stun gun for "no reason at all," and overheard one of the lieutenants say to another guard that they "had a field day beating up inmates" (Doc. Item 4).

Ndaula also submitted an affidavit by John Hammond, who states that, on March 10, 2004, he saw eight correctional officers physically assault Ndaula; they "snatched" Ndaula off his bed, kicked and pounded him, told him to shut up when he screamed, handcuffed him, hit him in the face, slammed his face on the walls, and shot him with a stun gun (Doc. Item 4).

In their statement of undisputed facts (Doc. Item 36), Allen, Smith and Emfinger state that, when the general shakedown took place at the River Correctional Facility on March 10, 2004, no one used excessive force against Ndaula and Allen did not witness any guards beating any inmates. Defendants also state that Smith did not falsify or omit material information from the unusual occurrence report regarding Ndaula and the March 10, 2004, shakedown (Doc. Item 36).

11

Patt stated in an affidavit (Doc. Item 36, Ex. C), that on March 10, 2004, she was a nurse (LPN) in the medical department of River Correctional Facility, she was given the task of filling out the transfer paperwork for the inmates to be transferred, Patt noticed and recognized Ndaula standing in the line of inmates to be transferred and was wearing her nurse's uniform at the time, and Patt spoke to Ndaula at that time, but he did not tell her he needed medical assistance and did not have any visible bruises, abrasions or lacerations, or appear to have anything wrong with him (Doc. Item 36, Exs. C, D). Patt filed an unusual occurrence report stating that, when she saw Ndaula standing with the inmates who were being transferred to another facility, she told one of the officers that Ndaula could not be transferred because he was a federal detainee (Doc. Item 36, Ex. D).

Gary Allen stated in an affidavit that he was employed by the LaSalle Management Company at the Claiborne Parish Detention Center in March 2004 and assisted in the River Correctional Facility shakedown on March 10, 2004 (Doc. Item 36, Ex. G). Allen states in his affidavit that he was not assisting in a supervisory capacity, but that Holliday had asked Allen to talk to the inmates in the recreation yard, as they emerged from the dormitories, about the rules and regulations of River Correctional Facility (Doc. Item 36, Ex. G). Allen further states in his affidavit that he walked through the hall and dormitories during the shakedown and did not

see any guards using any force against an inmate, and that he has no recollection of Ndaula (Doc. Item 36, Ex. G).

Since the affidavits submitted by Ndaula, as well as the medical record reflecting complaints of pain, refute the affidavits submitted by defendants as to whether defendants Allen, Smith and Emfinger used excessive force against Ndaula, or stood by watching while others used excessive force against Ndaula, on March 10, 2004, there are genuine issues of material fact which preclude a summary judgment in favor of defendants at this time.   Therefore, defendants' partial motion for summary judgment should be denied.

False Incident Report - Smith

Ndaula contends Smith filed a false incident report in order to conceal the facts of what occurred during the March 10, 2004 shakedown.  Smith states in her affidavit that she did not falsify or omit material information in any report regarding Ndaula during the shakedown at River Correctional Facility on March 10, 2004 (Doc. Item 36, Ex. H).  Neither Ndaula nor the defendants submitted a copy of Smith's incident report for March 10, 2004.

A prisoner must show favorable termination prior to bringing a Section 1983 claim based simply on the filing of a false disciplinary charge, absent an allegation of retaliatory interference with the exercise of a constitutional right.  Absent proof of favorable termination, there is no arguable basis for finding the violation of a federally protected right.  Woods v.

13

Smith, 60 F.3d 1161, 1165 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996).

In this case, Ndaula does not contend he was disciplined pursuant to a false report, but that the incident report did not reflect what actually occurred.  Ndaula has not shown how the alleged inaccuracy of the incident report affects him, nor has he alleged an injury caused by the alleged inaccuracy; therefore, Ndaula has not alleged a constitutionally protected interest in the accuracy of the incident report.

Since Ndaula has not alleged or shown specifically that he sustained some injury due to the allegedly incomplete report, he does not have a constitutionally protected interest in ensuring the accuracy of the report and thus does not have standing to bring this claim.  An actual injury is a constitutional prerequisite to a Section 1983 claim.  Lewis v. Casey, 518 U.S. 343, 351-53, 116 S.Ct. 2174, 2180 (1996).[2]("Physical injury is a predicate to an

---

[2] The requirement that an inmate alleging a constitutional violation must show actual injury derives ultimately from the doctrine of standing.  Lewis, 518 U.S. at 349,  116 S.Ct. at 2179.  See also, Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).  The violation of a constitutional right constitutes an "actual injury".  The Fifth Circuit has stated, in Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988), that a violation of constitutional rights is never de minimis, a phrase meaning so small or trifling that the law takes no count of it.  Thus, according to the Supreme Court, nominal damages are the appropriate award where constitutional rights have been violated but the plaintiff has not sustained, or proven, actual damages.  Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54 (1978); Oladipupo v. Austin, 104 F.Supp.2d 643, 651 (W.D.La. 2000).  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560,

award of compensatory damages for mental or emotional injury; its absence does not necessarily preclude recovery of, e.g., injunctive relief or nominal damages for constitutional injuries.").

Since there are no genuine issues of material fact which preclude a summary judgment on this issue, defendants' motion for summary judgment should be granted in favor of Pat Smith.

Denial of Medical Care - Patt

Ndaula also contends Patt denied him medical care for the injuries sustained as a result of defendants' use of excessive force, and that Patt failed to forward his medical records concerning those injuries to the Etowah County Detention Center in Gadsden, Alabama, to which Ndaula was later transferred.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a

---

112 S.Ct. 2130 (1992) (a plaintiff must meet three requirements to establish Article III standing: (1) an actual or imminent injury in fact, (2) causation, and (3) redress-ability). The rule in the Fifth Circuit is that in the absence of proof of actual, compensatory damages, a plaintiff who has been deprived of his constitutional rights may only collect nominal damages. However, the Fifth Circuit also adheres to the general rule that a punitive award may stand in the absence of actual damages where there has been a constitutional violation. Louisiana Acorn Fair Housing v. LeBlanc, 211 F.3d 298, 303 (5th Cir. 2000), cert. den., 121 S.Ct. 1225 (U.S. 2001).

conscious disregard of a substantial risk of serious harm.  Farmer
v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811
(1994).   A prison inmate can demonstrate an Eighth Amendment
violation by showing that a prison official refused to treat him,
ignored his complaints, intentionally treated him incorrectly, or
engaged in any similar conduct that would clearly evince a wanton
disregard for any serious medical needs.  Easter v. Powell, 467
F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of
Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  Disagreement
with medical treatment does not state a claim for Eighth Amendment
indifference to medical needs.  Norton v. Dimazana, 122 F.3d 286,
291 (5th Cir. 1997).

Defendants contend in their statement of undisputed facts that
Ndaula did not ask for any medical assistance from Nurse Patt when
she approached him as he stood in the inmate line on March 10, 2004
(Doc. Item 36).   Defendants further show in their statement of
undisputed facts that Ndaula did not submit a sick call request
form until March 12, 2004, which was received on March 15, 2004
(because Ndaula did not submit that request as an emergency), at
which time he was examined (Doc. Item 36).  The March 12, 2004,
sick call request shows Ndaula complained of the bruises he
received on March 10, 2004, contending every part of his body hurt,
ached or was sprained, he was itching where he had been stunned
with "that gun," and he was numb on the left side (Doc. Item 36,

16

Ex.).   The medical exam notes of March 15, 2004, reflect that Ndaula had no bruises, abrasions or lacerations, had a full range of motion in all extremities, ambulated without difficulty, and was prescribed Ibuprofen for a week as needed (Doc. Item 36, Ex.).

Ndaula submitted an affidavit from Demario Rontez Richmond, who states that, on March 10, 2004, he saw bruises on Ndaula's face and cuts on his wrist cause by handcuffs (Doc. 4).   Richmond also states in his affidavit that Ndaula also complained of swelling in his neck and lower back pain from the stun gun, for which he states that Ndaula was denied medical care (Doc. Item 4).

There are no medical records from River Correctional Center or any subsequent prison or medical care facility which show Ndaula had the injuries he claims.   His first medical record after the incident shows he did not have such injuries, and Ndaula has not claimed that record is false.   Moreover, Patt's affidavit and unusual occurrence report show Ndaula did not ask her for medical care on March 10, 2004, although he had an opportunity to do so. Since Ndaula has failed to show he was denied medical care for a serious medical need, there are no genuine issues of material fact which preclude a summary judgment on this issue.   Therefore, defendants' motion for summary judgment should be granted in favor of Patt on the issue of denial of medical care.

<u>Unconstitutional Conditions of Confinement - Emfinger</u>

Ndaula contends Emfinger refused to let him have a mattress

17

and his evening meal the night of March 10, 2004, and refused to let him have bedding for a week.

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.  The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf.  Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein.  The basic concept underlying the Eighth and Fourteenth Amendments is nothing less than the dignity of man.  Hope v. Pelzer, 536 U.S. , S.Ct. (June 27, 2002), citing Trop v. Dulles, 356 U.S. 86, 100 (1958). In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, the proper inquiry is whether those conditions amount to punishment of the detainee.  A constitutional violation exists only if the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective.  Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997).

To comply with the Constitution, inmates must receive reasonably adequate food. <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996). Also, <u>Berry v. Brady</u>, 192 F.3d 504, 507 (5th Cir. 1999); <u>Walker v. Blackwell</u>, 411 F.2d 23, 26 (5th Cir. 1969). Sleep also counts as one of life's basic needs. <u>Harper v. Showers</u>, 174 F.3d 716, 720 (5th Cir. 1999); <u>Hudson v. Palmer</u>, 468 U.S. 517, 530, 104 S.Ct. 3194 (1984). Claims of inadequate meals and the denial of basic supplies state a claim for unconstitutional conditions of confinement. Forcing a detainee to sleep without a mattress also states a due process violation. <u>Hebert v. Maxwell</u>, __F.3d__, 2007 WL 178104, *3 (5th Cir. 1/19/2007)("In the absence of a compelling governmental interest, housing a detainee in a room without sleeping accommodations, when other available rooms had sleeping facilities, is enough to survive a summary judgment motion based on qualified immunity.").

Ndaula states in his affidavit that, when he was placed in lockdown on March 10, 2004, Emfinger denied him a mattress and his evening meal that night, as well as bedding for almost a week (Doc. Item 4). Ndaula submitted an affidavit by inmate Richmond, who also states he saw Emfinger deny Ndaula bedding and his dinner meal (Doc. Item 4).

Defendants show in their statement of undisputed facts that Emfinger did not deny Ndaula a meal or a mattress on the night of March 10, 2004 (Doc. Item 36) and argue that, in any event, that is

not a sufficient deprivation to amount to a violation of the Fourteenth Amendment. However, if the deprivations in fact occurred and were not rationally related to non-punitive purpose, Ndaula's constitutional rights could have been violated.[3]

Since there are genuine issues of material fact as to whether Ndaula was denied a meal, a mattress, and bedding by Emfinger, and whether such deprivations amount to unconstitutional conditions of confinement under the circumstances of this case, defendants' motion for summary judgment should be denied on this issue.

<u>Conclusion</u>

Based on the foregoing discussion,

IT IS RECOMMENDED that the complaint against Michael Loyd be DISMISSED WITHOUT PREJUDICE for failure to timely effect service of process pursuant to Fed.R.Civ.P. rule 4(m).

IT IS ALSO RECOMMENDED that defendants' partial motion for summary judgment be GRANTED on the issue of a false report and that Ndaula's claims against Pat Smith be DISMISSED WITH PREJUDICE.

IT IS ALSO RECOMMENDED that defendants' partial motion for

---

[3] Defendants cite <u>Olgin v. Darnell</u>, 664 F.2d 107 (5th Cir. 1981), for the proposition that the Fifth Circuit has held the deprivation of a mattress does not violate a detainee's constitutional rights. However, in <u>Olgin</u>, the detainee had assaulted another inmate, so he was isolated in order to restore order and protect the other inmates, and he was denied a mattress and legal materials because he had threatened to burn the jail down. In that context, the defendants' actions were non-punitive. In the case at bar, there is no evidence that Ndaula's deprivations, if they actually occurred, were non-punitive.

20

summary judgment be DENIED on all other claims and as to all other defendants.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 20đe day of March, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

21